41 F.3d 1504
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Nairobi RAY, Defendant-Appellant.
 No. 93-5688.
 United States Court of Appeals, Fourth Circuit.
 Argued: Sept. 29, 1994.
Decided: Nov. 15, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. John A. MacKenzie, Senior District Judge. (CR-93-15)
 ARGUED: Robert Edward Frank, Norfolk, VA, for appellant. Arenda L. Wright Allen, Asst. U.S. Atty., Norfolk, VA, for appellee. ON BRIEF: Helen F. Fahey, U.S. Atty., Norfolk, VA, for appellee.
 E.D.Va.
 AFFIRMED.
 Before RUSSELL and WIDENER, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Following a jury trial, Nairobi Ray was convicted of the possession of a firearm by a convicted felon in violation of 18 U.S.C. Sec. 922(g)(1). Ray now appeals, challenging the conviction on several grounds. We affirm.
 
 
 2
 * On October 7, 1992 Detective Robert L. Simmons of the Portsmouth, Virginia, Police Department's Homicide and Robbery Division received a tip that a murder suspect nicknamed "Fats" could be found in Room 211 at the Days Inn in Chesapeake, Virginia. Simmons dispatched several officers to the motel without search or arrest warrants. Upon arriving there, the officers learned that Room 211 was registered to a woman later identified as Melissa Ryland. When the officers knocked at the door to Room 211, Ryland answered. The police officers and Ryland dispute whether she then gave consent to a search of the motel room, the officers claiming that she did. Upon their entry, the officers found the bathroom door locked. When they ordered the occupant to come out, Ray unlocked the door and came out. He was then arrested, handcuffed, and taken outside the motel room. According to the officers, Ray was advised immediately of his Miranda rights, a fact that Ray disputes.
 
 
 3
 The officers then searched the motel room and found a nine millimeter Tanfoglio pistol in a laundry-type bag along with man's clothing. While standing outside the motel room with Ray, one of the officers, Detective Connors, was told of the pistol and asked Ray about it. According to Connors, Ray admitted both to purchasing the firearm and to being a convicted felon. Another detective testified that Ray repeated these admissions on the way to the station. The police officers learned later that day that Ray was not the "Fats" for whom they were looking.
 
 
 4
 In February, 1993, a grand jury returned a one-count indictment charging Ray with a violation of 28 U.S.C. Sec. 922(g)(1), possession of a firearm by a convicted felon. Before trial, Ray moved to suppress the evidence obtained during the search of the motel room and the statements he made following his arrest. At the suppression hearing, in the course of describing the circumstances of their entry into the motel room with Ryland's consent, the police officers testified that only Ray and Ryland were then present in the room. Ryland and Ray disputed this account, testifying that consent was not given, and that Ray was not advised of his Miranda rights before admitting ownership of the pistol. They also testified that two other people, a woman friend of Ryland's and her child, were present in the room during the events in issue. At the conclusion of the hearing, finding that the officers' entry was with Ryland's consent and that Ray was timely advised of his Miranda rights, the district court denied Ray's suppression motion.
 
 
 5
 The suppression motion was denied on a Friday. When the case was called for trial on the following Tuesday, Ray moved for a continuance in order to subpoena as impeaching witnesses the woman and child claimed by Ray and Ryland, at odds with the police officers' testimony, to have been in the motel room. The motion was denied.
 
 
 6
 During jury voir dire, the prosecution exercised three of its six peremptory challenges to exclude the only three African-Americans in the jury venire of thirty. The district court denied Ray's ensuing Batson motion.
 
 
 7
 Following Ray's conviction by the jury, he noted this appeal.
 
 II
 
 8
 We consider in turn Ray's challenge to the denial of his suppression motion; the denial of his motion for continuance; the denial of his Batson motion; and the denial of his motion for dismissal for insufficiency of the evidence to convict him of the offense charged.
 
 
 9
 * Ray's contention that the district court erred in denying his motion to suppress the evidence gained in the search of the motel room because consent was never obtained must fail. The district court's determination that consent was given cannot be declared clearly erroneous. The police so testified, and their testimony is not manifestly incredible. The court simply disbelieved the contrary testimony of Ray and Ryland, and we must accord deference to this credibility determination.
 
 
 10
 Similarly, the district court's finding that Ray timely received the required Miranda warnings, again based upon a pure credibility determination as between conflicting accounts, cannot be rejected as clearly erroneous. The police officers so testified and the district court believed them.
 
 B
 
 11
 Ray's assignment of error to the district court's denial of his motion for continuance is without merit. The asserted basis for the motion was that only at the suppression hearing did it become apparent that the testimony of the two persons claimed by Ray and Ryland to be in the room with them would be needed to impeach the police officers' contrary account on this peripheral point. And Ray's explanation for the failure to have moved earlier was that it had not been possible over the intervening weekend to do so.
 
 
 12
 We review the district court's denial of Ray's motion for abuse of discretion, and in the matter of continuances, that discretion is broad indeed. Abuse can be found in a denial of continuance only when it can be seen as an " 'unreasoning and arbitrary insistence on expeditiousness in the face of a justifiable request for delay.' " United States v. Bakker, 925 F.2d 728, 735 (4th Cir.1991) (citing United States v. LaRouche, 896 F.2d 815, 823-25 (4th Cir.), cert. denied, 496 U.S. 927, 110 S.Ct. 2621, 110 L.Ed.2d 642 (1990)). We require that a party seeking a continuance in order to procure needed testimony must provide the trial court with the identity of the witnesses, the nature and relevance of the proposed testimony, a showing that the witnesses probably can be obtained, and a showing that due diligence has been exercised to obtain the witnesses for the trial date as previously set. United States v. Clinger, 681 F.2d 221, 223 (4th Cir.1982).
 
 
 13
 In the circumstances presented to the district court by Ray's motion, we cannot conclude that the court abused its broad discretion in denying the continuance. The court was entitled to take the view that due diligence would have anticipated the need for all available witnesses to corroborate Ray's and Ryland's version of what obviously would be a hotly disputed factual account of the critical events in the motel room.
 
 C
 
 14
 We next consider Ray's contention that in exercising peremptory challenges to exclude all of the three blacks on the jury venire, the Government violated the rule of Batson v. Kentucky, 476 U.S. 79 (1981), under which Government prosecutors may not, conformable to the requirements of equal protection, peremptorily challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the case against a black defendant. Id. at 89. To make out a prima facie case of a Batson violation, a defendant must show that the relevant facts and circumstances give rise to an inference of the forbidden conduct. Id. at 96. Once a prima facie case has been made, the burden shifts to the Government to provide a neutral explanation for the conduct. Id. at 96-97. This neutral explanation "need not rise to the level of justifying exercise of a challenge for cause." Id. at 97. We review a district court's finding that a prosecutor's proffered reasons for excluding jurors were race neutral as a finding of fact entitled to great deference. See Batson, 476 U.S. at 98 n. 21 (citing Anderson v. Bessemer City, 470 U.S. 564, 573 (1985)).
 
 
 15
 In the instant case in which the defendant was a black man, only three of the thirty venirepersons were black. The government exercised three of its six peremptory challenges to strike all of the potential black jurors. These undisputed facts obviously made out a prima facie case of race-discrimination. The Government's proffer of race-neutral reasons were then, however, found by the district court not to be pretextual. Specifically, the prosecutor gave as her reasons for excluding two of the potential jurors that their particular relationships and occupations were such as to make them inclined to sympathy for the black defendant: one was married to a social worker, the other was employed in an inner city school district. Whatever we may think of the validity of these perceptions, the district court's finding that they were race-neutral and not pretextual cannot be declared clearly erroneous.
 
 
 16
 The prosecutor's reason for excluding the third black venireperson is more problematic. The prosecutor's explanation for striking this person was the prosecutor's asserted belief that as a woman under thirty this potential juror might consider the prosecutor, herself a woman under thirty, as too inexperienced. Here again, whatever we may think of the validity of this unusually subtle perception on the prosecutor's part, we cannot declare the district court's finding that it was not a pretextual cover-up for race discrimination clearly erroneous.*
 
 D
 
 17
 Finally, Ray's argument that the evidence was insufficient to convict him of the firearms possession charge is without merit.
 
 
 18
 Evidence is sufficient to support a verdict of guilty if, viewed in the light most favorable to the government, any rational trier of fact could have found from it every essential element of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307 (1979). The essential elements of the 18 U.S.C. Sec. 922(g)(1) offense are that (1) the defendant knowingly possessed a firearm; (2) previously having been convicted of a crime punishable by imprisonment for a term exceeding one year; (3) the firearm then being in or affecting commerce. The evidence here easily satisfied the Jackson test of sufficiency as to each of these elements. The arresting police officers testified that Ray specifically admitted both his ownership of the pistol and that he had been convicted of the requisite crime. That left only the interstate nexus element. As to that element, the Government had only to prove that the firearm had travelled in foreign or interstate commerce at some time in the past. Scarborough v. United States, 431 U.S. 563 (1977). Here, the Government presented the testimony of an experienced ATF agent that, as revealed by a weapons trace, the pistol possessed by Ray had been manufactured in Italy and brought into this country in 1987 through Miami, from where it had been sent to a wholesaler in New York, and eventually to Virginia, where it was seized on October 7, 1982.
 
 
 19
 AFFIRMED.
 
 
 
 *
 In his brief, Ray technically identified as the only issue concerning the Government's peremptory challenge of this black venireperson (along with the other two) was whether it was race-based in direct violation of Batson. Appellant's Br. 2. In the argument section of his brief, he suggests tangentially that, given the Government's proffered reason--that the person was a woman under thirty--the challenge might be unconstitutional not as race-based but as based on either or both her age and her gender. Id. at 11, 12. We do not consider either claim properly before us on this direct appeal. Neither was made in the district court, where the Government was only required to justify the challenge against a claim of race-discrimination and on this appeal, where the issues were not properly presented for our review, see Rule 28(a)(3), Fed. R.App. P., the Government properly declined to address them
 In so ruling, we observe that, as Ray's argument anticipated might occur, the Supreme Court has now extended the Batson principle to gender-based peremptory challenges. See J.E.B. v. Alabama ex rel. T.B., --- U.S. ----, 114 S.Ct. 1419 (1994). We express no opinion as to whether such a claim might be presented in this case under 28 U.S.C. Sec. 2255, nor upon its merits if it were.